# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| MICHAEL S. ALLGEIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:11-CV-261 |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Michael Allgeier sought Social Security disability benefits, but an Administrative Law Judge denied him relief. The ALJ concluded that Allgeier's conditions – including obesity, degenerative disc disease, osteoarthritis, carpal tunnel syndrome, sleep apnea, and abdominal hernia – were significant physical impairments, but the ALJ ultimately held that Allgeier retained adequate residual functional capacity to perform sedentary work. Allgeier now seeks review of the ALJ's decision. For the following reasons, the ALJ's decision will be affirmed.

## FACTUAL BACKGROUND

The record in this case derives from three sources: Allgeier's medical records, the testimony at the administrative hearing, and the ALJ's opinion. I'll recount the factual background in some detail drawing upon all three sources because doing so is necessary to fully evaluate Allgeier's claim.

### Medical Records

Allgeier's medical records include a combination of treatment notes from his treating physicians and state agency physicians, as well as medical and prescription forms.

In January 2006, Allgeier was in a motor vehicle accident, and afterwards he was

diagnosed with acute and chronic back pain. [Tr. at 235-36.] On July 10, 2006, Allgeier was examined at the V.A. by Dr. Anton Kojouharov, where he complained of chronic spinal and back pain going all the way back to 1985. [Tr. at 242-43.] Dr. Kojouharov noted that Allgeier complained that his "activities of daily living are affected." [Tr. at 243.] Allgeier claimed difficulty in moving his lower extremities and an inability to lift heavy objects or bend because of spinal pain. *Id*. Additionally, Allgeier reportedly suffered from acid reflux, hypertension, headaches, shortness of breath, and a decreased range of motion in the spine. [Tr. at 243-44.] Dr. Kojouharov noted that all of Allgeier's physical activity was affected by his obesity, as he was at least 100 pounds over his medically desired weight. [*Id.*]

Ultimately, Dr. Kojouharov diagnosed Allgeier with degenerative disc disease, degenerative joint disease, migraine headaches, acid reflux, hyperlipidemia, hypertension, morbid obesity, and nicotine addition. [*Id.*] Dr. Kojouharov determined that Allgeier's ability for employment was greatly diminished. [Tr. at 242.] Allgeier was diagnosed as unable to perform any job requiring physical labor but would be able to operate in a sedentary role such as a desk job or clerical work for which he had been previously trained. [*Id.*]

On August 20, 2007, Allgeier underwent surgery to treat carpal tunnel syndrom in his left wrist. [Tr. at 246] Allgeier recovered well after the surgery; he retained feeling in most fingers and was encouraged to perform hand exercises to regain strength and functioning. [Tr. at 296, 300] On September 13, 2007, Allgeier complained of back pain, and he stated that his prescription of Protonix used for treating his acid reflux was not "helping him much." [Tr. at 298.] Dr. Rashmi Jain examined him but found nothing unusual with Allgeier's condition. [Tr. at 298-300.]

On January 25, 2008, Allgeier again visited the V.A. to see Dr. Jain because he needed more pain medication. [Tr. at 372-76.] Allgeier reported continued pain and that he felt depressed because of this pain. [*Id.*] He had gained weight since his last visit to Dr. Jain and indicated that he was not very active or mobile due to the pain. [*Id.*] Dr. Jain performed a physical examination concluding that Allgeier suffered from lower back pain, esophagitis, blood pressure, chronic migraines, and erectile dysfunction. [*Id.*] Allgeier declined to undergo further mental health evaluation; he stated he was sad only because of the pain and did not have actual depression. [*Id.*] Dr. Jain discussed with Allgeier possible surgical options to alleviate some of his pain, but Allgeier refused additional surgeries and/or physical therapy strategies to ease the pain. [*Id.*] Dr. Jain again emphasized to Allgeier that he needed to lose weight and that continued weight gain would result in the need for additional blood pressure medication. [*Id.*]

On June 5, 2008, Allgeier complained of continued back pain and chronic migraines. [Tr. 280-82.] He again reported that he felt sad and depressed, but denied experiencing any suicidal thoughts. [Tr. 281.] Dr. Jain again noted that Allgeier was experiencing continued pain in his back, but that the physical examination did not indicate any abnormalities. [Tr. 280-82.] Further, during this visit Allgeier was again counseled about his body weight. [Tr. 281.] He was given training courses on dietary and nutritional choices, but Dr. Jain noted that if diet and exercise were not enough, additional medications would be added. [*Id.*]

On June 19, 2008 Allgeier saw a psychiatrist, Dr. Suryawala. [Tr. 275-76.] Allgeier was experiencing continued sadness due to his chronic pain, and he requested some sort of medication to lower his irritability. [Tr. at 275-80.] Dr. Suryawala noted that Allgeier had general thoughts about suicide because of the pain but never any specific intent or plans to harm

himself.  [Tr. at 279.]  Ultimately, Dr. Suryawala diagnosed Allgeier as having a mood disorder

due to chronic pain and prescribed him with Prozac.  [Tr. at 275, 279.]

On June 30, 2008, Allgeier received a neurological evaluation from Dr. Shah due to the

ongoing chronic migraines he experienced since 2006.  [Tr. at 343-44.]  Allgeier indicated that

the migraines were powerful and constant, encompassing the entire front portion of his head and

into his temples.  [Tr. at 343.]  While Allgeier experienced sensitivity to light, there were no

symptoms of nausea or vomiting.  Allgeier again complained of continuing back pain.  [*Id.*]  A

neurological examination revealed completely normal cognitive functions.  [*Id.*]  Allgeier's

speech was totally normal and examinations of his cranial nerve proved unremarkable.  [*Id.*]  Dr.

Shah determined Allgeier's headaches were related to muscle contractions and that some could

be the result of rebound headaches from the previously large dosage of pain killers Allgeier was

taking.  [Tr. at 344.]  Dr. Shah recommended that Allgeier pursue a gradual plan to decrease and

ultimately discontinue the usage of pain medications.  [*Id.*]

### Testimony at the Hearing

The ALJ heard testimony from Allgeier and vocational expert Thomas F. Dunlevy.

Allgeier testified that he is a high school graduate with approximately one year of college course

credits in welding and emergency medical technician classes.  [Tr. at 48.]

Allgeier testified that he had multiple physical maladies including problems with his

lower back, knee, ankle, upper extremities, reflux disease issues, carpal tunnel syndrome, and

recurring migraine headaches.  [Tr. at 31.]  He stated that he's experienced continuing pain from

an abdominal hernia caused by a surgical incision and that neither of the two attempts to

surgically repair the hernia succeeded.  [Tr. at 31-32.]  As a result, Allgeier experiences

abdominal pain when attempting to lift items or pick up items.  [Tr. at 32.]  Furthermore,

Allgeier stated that he experiences pain when he leans forward to write or type on a keyboard,

and that it can become so severe that he has to stand or shift his body weight after thirty minutes

of sitting in one position.  [Tr. at 32-33.]  Allgeier's doctors indicated that they could attempt

another surgery to repair the hernia, but were unable to guarantee that it would be fixed.  [Tr. at

33.]  As a result, Allgeier said that he would not undergo any further surgeries on the abdominal

hernia, instead continuing to experience pain and mobility limitations.  [Tr. at 34.]  The

abdominal pain and mobility limitations were present both on the date of the hearing and prior to

June 30, 2008.  [Tr. at 35.]

  As to his treatment, Allgeier testified that he was taking the pain medications Darvocet

and Vicodin prior to June 30, 2008, mainly due to pain experienced in his back, knee, and ankle,

but he hasn't undergone surgery to address his back pain.  [*Id.*]  Additionally, he has not received

an MRI due to metal implanted in his knee.  [*Id.*]  Allgeier also testified that there are times

when his back pain spreads to his arms regardless of how he is sitting or leaning.  [Tr. at 36.]

Since 2008, Allgeier has been wearing a Transcutaneous Electrical Nerve Stimulation unit or

"TENS unit" to help alleviate his back pain.  The TENS unit is an electrical device that Allgeier

attaches to himself which sends electrical impulses to his body to block pain signals supposedly

lowering the pain he experiences.  [Tr. at 36-7.]  Allgeier testified that he uses the TENS unit

almost all day everyday.  [Tr. at 36-7, 41.]

  He also testified about his ability to get around.  Allgeier stated that he is unable to stand

in one place without experiencing pain in his back, right knee, and right ankle.  [Tr. at 41.]  And

he said that after approximately ten minutes of standing in one place, he has to sit down to

alleviate the pain. [*Id.*] Allgeier said he can walk ten to twelve feet without the use of a cane before he must stop and approximately 100 feet with the use of the cane. [Tr. at 42.] He also said that he experiences difficulty and pain when climbing stairs and must stop after approximately seven steps. [Tr. 43.]

Allgeier is unable to pick up items over ten pounds and depends on his family to pick up items from the floor. [*Id.*] For example, he said he can't pick up a gallon of milk from the floor on his own. [*Id.*] Additionally, Allgeier testified that he's had problems with his wrist and fingers after a carpal tunnel surgery on his left wrist in August 2007. [Tr. at 44.] Allgeier noted that even though he experiences carpal tunnel symptoms in his right wrist, he is hesitant to undergo surgery because of the results in his left wrist. [Tr. at 44-5.] Ultimately, the pain Allgeier experiences in his wrist limits his ability to write, type on a keyboard, and use tools. [Tr. at 45.]

Allgeier also discussed at length the recurring migraine headaches he has been experiencing since before 2008. Specifically, Allgeier testified that when experiencing a migraine, the pain is debilitating and he is forced to lay down in a dark room until the migraine passes. [Tr. at 45-8.] Allgeier stated he experiences a migraine almost every single day, and that he's been prescribed Zolmitriptan to help reduce his pain but does not take them each day. [Tr. at 46.] He is very sensitive to light and believes that is the biggest trigger for his migraines, so he wears sunglasses to ward them off. [Tr. at 47.]

Finally, Allgeier testified he suffers from sleep apnea and uses a CPAP machine to aide in his sleeping. [Tr. at 49.] Allgeier also referenced the 2006 car crash that was followed by a period of significant weight gain totaling over 100 lbs. [*Id.*] Allgeier concluded by stating that

he's attempted to control his weight and is hopeful to lose more weight. [Tr. at 50.]

Beyond Allgeier, the ALJ heard testimony from Michael Dunlevy, a vocational expert. Dunlevy testified that jobs exist in the national economy for someone with Allgeier's age, education, work experience, and residual functional capacity. [Tr. 53-4.] He testified that in light of Allgeier's health conditions, a similarly situated individual could perform the work of an assembler, a sorter, or a visual inspector of production items with, respectively, approximately 5,000, 2,000-to-3,000, and 3,000-to-4,000 jobs in the State of Indiana. [Tr. at 53-55.] Dunlevy also noted that in addition to the low-impact labor positions Allgeier is eligible to hold, there are approximately 40,000 sedentary jobs in the State of Indiana that would accommodate the restrictions on Allgeier's ability to work due to his health conditions. [Tr. at 55.]

## Summary of the ALJ Decision

On July 22, 2010, the ALJ issued a decision denying benefits for Allgeier. At Step One of the disability evaluation process, the ALJ determined that Allgeier had not engaged in substantial gainful activity during the relevant period. [Tr. at 11.]

At Step Two, the ALJ concluded that Allgeier had a number of severe physical impairments including obesity, degenerative disc disease, osteoarthritis, carpal tunnel syndrome, sleep apnea, and an abdominal hernia through the date last insured. [*Id.*] At Step Three, the ALJ concluded that through the date last insured Allgeier did not have an impairment which met or was medically equivalent to one of the listed impairments required for Social Security benefits. [Tr. at 12.] The ALJ noted that, despite Allgeier's description of limitations to his daily activities, there were important countervailing factors present in determining that Allgeier is "not disabled." First, the ALJ noted that Allgeier's reported daily limitations could not be objectively

verified through any of his multiple medical examinations. [Tr. at 20.] Second, the ALJ stipulated that, even if Allgeier's daily limitations were in fact as severe as he reported, it is difficult to attribute the limitations solely to Allgeier's medical conditions given the weak supporting evidence in his lengthy medical history. [*Id.*]

Ultimately, the ALJ held that the evidence required a finding of "not disabled." [*Id.*] In support of this determination, the ALJ reviewed Allgeier's medical records in great detail, specifically focusing on a Physical Functional Capacity Assessment performed by Dr. M. Brill on January 12, 2009, an assessment that was affirmed a month later by Dr. R. Bond. [Tr. at 19-20.] These tests indicated that Allgeier's residual functional capacity supported a finding of "not disabled." [Tr. at 20.] As the ALJ put it: "The residual functional capacity conclusions reached by the physicians and medical professionals employed by the State Disability Determination Services supports a finding of not disabled and are given great weight." [*Id.*]

At Step Four, the ALJ determined that through the date last insured of June 30, 2008, Allgeier was unable to perform any past relevant work. [*Id.*] The ALJ noted that Allgeier previously worked as a welder and machine repairer, but that the vocational expert testified that the exertion levels for both professions were beyond Allgeier's current capabilities. [Tr. at 21.] On the basis of this testimony the ALJ determined that Allgeier was unable to perform past relevant work. [*Id.*]

At Step Five, the ALJ considered Allgeier's age, education, professional experience, and residual functional capacity to conclude that were jobs which existed in significant numbers in the national economy which he could perform. [Tr. at 21.] In support of this finding, the ALJ reviewed Allgeier's residual functional capacity assessment and the testimony of the vocational

expert regarding his ability to work in light of the assessment and his physical condition.  [*Id.*]

The ALJ relied upon the testimony of the vocational expert that, despite Allgeier's physical

limitations, he could perform the requirements of an assembler, sorter, and a visual inspector.

Therefore, the ALJ held that Allgeier was not disabled.  [Tr. at 22.]

## DISCUSSION

Unless there is an error of law, the Court will uphold the Commissioner's findings of fact

if they are supported by substantial evidence in the record.  *Rice v. Barnhart*, 384 F.3d 363, 369

(7th Cir. 2004); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  A conclusion is supported

by substantial evidence if there is a "logical bridge between the evidence and the result."

*Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).

An applicant for disability insurance benefits must establish "the inability to do any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  The Social

Security Administration's regulations prescribe the familiar five-step sequential inquiry outlined

above.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. §§ 404.1520,

416.920.

Although Allgeier was represented by counsel in the proceedings before the ALJ, his

appeal to this Court was filed *pro se*.  He filed a two-page opening brief and opted not to file a

reply brief.  This limited briefing fails to advance any challenges to the ALJ's decision with any

degree of particularity and instead only reiterates in his brief his various medical conditions and

the symptoms he continues to experience.  Allgeier makes no mention of or the reference to the

ALJ opinion in his brief and fails to point out to the Court any mistakes or misapplications of law on behalf of the ALJ.  He simply describes his desire to work and the reasoning behind when he ultimately chose to seek benefits and the circumstances surrounding the decision.  Despite reiterating that he is disabled and unable to work, he does not identify a single legal or factual error in the ALJ's decision.  Furthermore, Allgeier does not at any point indicate that the ALJ made a mistake in the recounting of his medical record.

Allgeier cites to a July 2011 V.A. decision finding him 50% disabled on account of migraine headaches, effective January 12, 2009.  He claims that this lends support to his challenge to the ALJ's decision.  But that finding is not relevant for two reasons:  first, the effective date of the V.A. determination comes over a year after Allgeier's insured status had expired – June 30, 2008.  In addition, a decision by the V.A. is not binding on the Social Security Administration because they may well be guided by differing standards.  20 C.F.R. § 404.1504.

The ALJ found that Allgeier had the RFC to do sedentary work.  Sedentary work involves lifting no more than 10 pounds and occasionally lifting or carrying articles like dockets, files, ledgers and small tools.  20 C.F.R. §§ 404.1567(a), 416.967(a).  In arriving at that conclusion, the ALJ did an exhaustive review of the medical records and relied in part on the determination by the medical professionals employed by the State Disability Determination Services.  [Tr. 20.]  The ALJ found that there was nothing in the medical records from Allgeier's treating physicians that would suggest a more limited RFC, and my independent review of those records confirms that.  Thus, the ALJ concluded, based upon evidence from a vocational expert, that there 40,000 sedentary jobs in the State of Indiana that would accommodate all of the restrictions provided in Allgeier's RFC.  [Tr. 22.]

The question I must answer is not whether or not Allgeier is disabled, but whether there is substantial evidence in the record to support the ALJ's decision of "not disabled." *Books v. Chater*, 91 F. 3d 972, 977 (7th Cir. 1996). I am not at liberty to reevaluate conflicting evidence or override the ALJ's decision with my own judgment as long as reasonable minds could differ on the outcome of the decision. *Lee v. Sullivan*, 988 F. 2d 789, 793-94 (7th Cir. 1993). After a careful review of the parties' briefs, Allgeier's medical records, the ALJ hearing testimony, and ALJ decision, I conclude that substantial evidence in the record supports the ALJ's finding that Allgeier is not disabled.

While I can fully appreciate and sympathize the difficulties Mr. Allgeier faces with his medical conditions, my review of the ALJ's decision to deny him benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). There is nothing presently before me that would indicate the ALJ's decision was not supported by substantial evidence.

## CONCLUSION

The ALJ provided legitimate reasons for his opinion based off on Allgeier's medical records, residual functional capacity assessment, hearing testimony, and testimony of a vocational expert regarding Allgeier's ability to work. Accordingly, the decision of the ALJ is **AFFIRMED**.

**SO ORDERED**.

ENTERED: July 10, 2012          s/ Philip P. Simon
                                PHILIP P. SIMON, CHIEF JUDGE
                                UNITED STATES DISTRICT COURT

11